2008 ME 109

**Jeanne M. NAJEMY et al.**

v.

**BOARD OF ENVIRONMENTAL PROTECTION et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 30, 2008.

Decided: July 3, 2008.

Richard N. Bryant, Esq., Van Meer & Belanger, Portland, ME, for Richard N. Bryant and Jeanne M. Najemy.

Paul F. Driscoll, Esq., Norman, Hanson & DeTroy, LLC, Portland, ME, for Spurwink Woods, LLC.

G. Steven Rowe, Attorney General, Margaret A. Bensinger, Asst. Atty. Gen., Augusta, ME, for Maine Board of Environmental Protection.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.

CLIFFORD, J.

[¶1] Jeanne M. Najemy and Richard N. Bryant appeal from the judgment of the Superior Court (Cumberland County, *Cole, J.*) affirming the decision of the Board of Environmental Protection to issue stormwater and natural resources protection permits to Spurwink Woods, LLC. Najemy and Bryant contend that the Board erred in concluding that Spurwink Woods did not have to comply with the requirements of the Site Location of Development statute, 38 M.R.S. §§ 481–490 (2007). We affirm the judgment.

## I. BACKGROUND

[¶2] The subject of this litigation is a forty-two-unit single-family and condominium subdivision in Cape Elizabeth proposed for development by Spurwink Woods (the Project). Spurwink Woods seeks to construct twenty-three single-family residential homes and nineteen condominium units on a portion of its 24.97–acre parcel of property and to convey the remaining property to the Town.

[¶3] Among the many approvals for the Project from various entities, the Maine Department of Environmental Protection granted Spurwink Woods a permit pursuant to stormwater provisions, *see* 38 M.R.S. § 420–D (2007), and the Natural Resources Protection Act (NRPA), 38 M.R.S. §§ 480–A to 480–FF (2007). The Department issued the stormwater/NRPA permit over the objection of abutting landowners Najemy and Bryant. Najemy and Bryant's subsequent appeal to the Board of Environmental Protection was unsuccessful. *See* 38 M.R.S. §§ 341–D(4), 344(2–A) (2007).

[¶4] In March of 2007, Najemy and Bryant filed a petition in the Superior Court seeking review of the Board's decision pursuant to M.R. Civ. P. 80C. By judgment dated October 12, 2007, the court affirmed the decision of the Board. Najemy and Bryant appealed.

## II. DISCUSSION

[¶5] Najemy and Bryant's primary contention is that the Board erred by not requiring Spurwink Woods's proposed development to comply with the provisions of the Site Location statutes found in 38

M.R.S. §§ 481–490. Because the Superior Court acted in its appellate capacity, we review directly the decision of the Board for "findings not supported by evidence in the record and for abuse of discretion or other errors of law." *Hannum v. Ed. of Envtl. Prot.*, 2006 ME 51, ¶ 9, 898 A.2d 392, 396; *see also* 38 M.R.S. § 341–D(4). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Hannum*, 2006 ME 51, ¶ 9, 898 A.2d at 396 (quotation marks omitted). Further, although we are not bound to reach the same conclusions as the Board, "an administrative agency's interpretation of a statute administered by it will be given great deference and should be upheld unless the statute plainly compels a contrary result." *Id.* (quotation marks and alteration omitted).

[¶ 6]   The Site Location statute contains numerous environmental criteria that must be met by any proposed development that falls within its scope. 38 M.R.S. §§ 481–490. It applies to any "development of *state or regional significance that may substantially affect the environment.*" 38 M.R.S. § 483–A(1) (emphasis added). Such a development is defined as "any federal, state, municipal, quasi-municipal, educational, charitable, residential, commercial or industrial development" that meets at least one of five criteria. 38 M.R.S. § 482(2). Those criteria are met if the development: (1) "[o]ccupies a land or water area in excess of 20 acres," (2) is a "metallic mineral mining or advanced exploration activity . . . or an oil or gas exploration or production activity," (3) "[i]s a structure as defined in this section," (4) "[i]s a subdivision as defined in this section," or (5) is an "oil terminal facility as defined in this section." 38 M.R.S. § 482(2)(A)-(F). If any one of these descriptions applies to the proposed develop-

ment, the developer must comply with the many environmental requirements of the Site Location statute in order to obtain Department approval before beginning construction. *See* 38 M.R.S. § 484.

[¶ 7]   The issue for decision before the Board was whether the Project falls within any one of these five descriptions such that Site Location approval is required. The parties agree that an appropriate analysis of the applicability of the Site Location statute in this matter involves only whether the Project qualifies as either a "structure" or as a "subdivision" pursuant to subsections (C) and (D) of section 482(2). The Board considered the Project according to both definitions, and concluded that the Project is neither a subdivision nor a structure within the meaning of section 482, thus making the Site Location statute inapplicable.

■ [¶ 8]   "[S]tructure" is defined as "[b]uildings, parking lots, roads, paved areas, wharves or areas to be stripped or graded and not to be revegetated that cause a total project to occupy a ground area in excess of 3 acres." 38 M.R.S. § 482(6)(B). The Board found that the Project includes a total of only 2.96 acres of structure. Contrary to Najemy and Bryant's contention, there is ample evidence in the administrative record to support the Board's calculation of the acreage of structure as a matter of fact. Thus, we do not disturb the Board's conclusion that the Site Location law is not applicable to the Project by virtue of the definition of "structure."

■ [¶ 9]   A "subdivision" is defined as "the division of a parcel of land into 5 or more lots to be offered for sale or lease to the general public during any 5–year period, if the aggregate land area includes more than 20 acres." 38 M.R.S. § 482(5). A calculation of such aggregate land area

includes "lots to be offered together with the roads, common areas, easement areas and all portions of the parcel of land in which rights or interests, whether express or implied, are to be offered." 38 M.R.S. § 482(5). There is no dispute that the Project includes more than five lots to be offered for sale or lease to the general public within a five-year period. We must consider, therefore, whether the Board's finding that the Project's aggregate land area does not total more than twenty acres is supported by the evidence in the record.

[¶ 10] Property is exempted from the calculation of a subdivision's aggregate land area if it involves certain transactions, including "[p]ersonal, nonprofit transactions, such as the transfer of lots by gift, if those lots are not further divided or transferred within a 5–year period," 38 M.R.S. § 482(5)(E)(2), unless those transactions are intended to circumvent the Site Location statutes. 38 M.R.S. § 482(5)(E).

[¶ 11] The parties agree that Spurwink Woods owns a 24.97–acre parcel on which to construct the Project, which is more than the aggregate area requirement for a subdivision in section 482. Spurwink Woods has agreed, however, to transfer a significant portion of its property, more than eight acres, to the Town as a gift.[1] Pursuant to 38 M.R.S. § 482(5)(E)(2), the Board concluded that Spurwink Woods's transfer of that property to the Town removed that acreage from the calculation of the Project's aggregate area, resulting in less than twenty acres of property that qualifies as a subdivision according to the definition in section 482. The Board thus

determined that the Site Location statute is not applicable to the Project.

[¶ 12] Najemy and Bryant contend that there are tangential benefits to Spurwink Woods or its future residents resulting from the donation of property to the Town, rendering the gift exception in section 482(5)(E)(2) inapplicable in calculating the Project's aggregate area. There is, however, competent record evidence in the record to support the Board's finding that the transfer of the acreage to the Town constitutes a legitimate gift to the Town within the meaning of section 482(5)(E)(2), making that gifted acreage exempt from calculation of the subdivision's aggregate land area, and thereby reducing the total land area of the Project to less than twenty acres. Accordingly, we do not disturb the Board's decision that the Project does not meet the definition of a subdivision pursuant to section 482,[2] and therefore that the developer does not have to satisfy the requirements of the Site Location statute.

[¶ 13] The Board's conclusion is in line with the underlying purpose of the Site Location statute. By its plain language, the Site Location statute is intended to apply only to large developments of great significance to the environment of surrounding areas. It was enacted to provide the State, through the Department of Environmental Protection, with a means to "control the location of those developments *substantially* affecting local environment in order to [ensure] that such developments will be located in a manner which will have a minimal adverse impact on the natural environment within the develop-

---

1. Although Spurwink Woods originally intended to transfer more than twelve acres to the Town, the Board determined that approximately four acres of that property would not qualify as exempt acreage because certain needs of the development would require it to remain in Spurwink Woods's possession.

2. We are also not persuaded by Najemy and Bryant's remaining contention, that the Board denied them their rights of procedural due process.

ment sites and of their surroundings and protect the health, safety and general welfare of the people." 38 M.R.S. § 481 (emphasis added). The Department's approval is required only for any construction of a "development *of state or regional significance* that may *substantially* affect the environment." 38 M.R.S. § 483–A(1) (emphasis added). Two of the factors measuring whether a development of State or regional significance that may substantially affect the environment are the total amount of structures in the development and whether the project occupies an area in excess of twenty acres. Based on that criteria, Spurwink Woods's Project is not the type of development to which the Site Location statute was intended to apply. Further, the Board recognized the strong public policy of encouraging donations of land to local municipalities, as is evidenced by the acreage calculation exemption for such gifts in section 482(5)(E)(2).

[¶ 14] The Board's determination that the Project constitutes neither a "structure" nor a "subdivision" within the meaning of the Site Location statute is amply supported by competent evidence in the administrative record, and we do not disturb its conclusion that the Site Location statute does not apply to Spurwink Woods's proposed development.

The entry is:

Judgment affirmed.